Filed 7/19/13  P. v. Arroyo CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RUBEN ALEX ARROYO,<br><br>    Defendant and Appellant. | D062365<br><br><br><br>(Super. Ct. No. SCS239068) |

APPEAL from a judgment of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Affirmed as modified with directions.

Theresa Osterman Stevenson, by appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Ruben Arroyo appeals from a judgment convicting him of assault with a semiautomatic firearm and other offenses.  The key dispute at trial was whether

defendant was holding a gun (rather than some other item) when he encountered the victim. On appeal, defendant argues the trial court erred by permitting the prosecution to display or admit into evidence (1) photographs of guns, (2) hearsay testimony that the victim told third parties that defendant had a gun, (3) threats made by defendant's wife to the victim, and (4) gang expert testimony. He also contends the court erred by requiring a defense witness to appear in prison clothes. Further, he asserts there is insufficient evidence to support the jury's finding that he committed an act likely to result in the application of force. Finally, he argues the prosecutor made improper statements during closing arguments.

We reject these contentions, except for the failure to have a defense witness appear in civilian, rather than prison, clothing. We conclude this error was harmless.

The Attorney General concedes, and we agree, the trial court should have stricken defendant's conviction of the lesser included offense of assault with a firearm. We modify the judgment to strike this conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of March 31, 2010, Martin Enciso was driving on Park Way in Chula Vista where he intended to stop at the home of his friend, Brian Philips. Defendant drove past Enciso going the opposite direction. Defendant was driving "real slow" and was staring at Enciso in a "kind of aggressive" manner. Enciso did not know defendant, but he stared back at him. When Enciso made a U-turn to park in front of Philips's house, defendant also made a U-turn and drove to Enciso's car. Defendant stopped his car (a

2

Mercedes) at an angle in front of Enciso's car, so that the two cars were close together and illuminated by their headlights.

Defendant got out of his car, pointed a gun, and walked over to Enciso's car.[1] Defendant was saying something, but Enciso could not understand him because Enciso's car window was closed and he had loud music playing. With the gun pointed at the car door, defendant grabbed towards Enciso's car door handle as if he was going to open the door. Frightened, Enciso managed to squeeze his car out of the area and drive off.[2]

Enciso drove around the block and then returned to Park Way, where his apartment was located. Enciso looked back and could see the taillights from the Mercedes by Philips's house. Enciso went inside his apartment and told his brother about the incident. Enciso also talked to Philips on the phone, and Philips told him the Mercedes was leaving in the direction of Enciso's home. Enciso went outside and saw the Mercedes drive by his home. Enciso's brother quickly got in his car to follow the Mercedes and get the license plate. Meanwhile, Enciso called 911 to report the incident. When the 911 operator asked if the people in the Mercedes looked like gang members, Enciso said the driver (i.e., defendant) did.

---

[1] Under general appellate review standards, we summarize the facts in the light most favorable to the jury's verdict. (See *People v. Dayan* (1995) 34 Cal.App.4th 707, 709.) In our Discussion section, we present additional testimony, particularly concerning the disputed gun issue, as necessary to resolve defendant's arguments on appeal.

[2] Enciso explained that defendant's car was stopped close in front of his car and he felt "pinned in[,]" but there was "just enough space" for him to "squeeze out" and drive away.

Enciso's brother was able to get the license plate number of the Mercedes and the brothers provided the number to the police. Defendant was apparently arrested several weeks later.

At trial, the prosecution's gang expert opined that defendant was a gang member; staring at a gang member is an act of disrespect that demands a response; and hypothetical facts (like those underlying the charged offense) would benefit the gang.

*Defense*

The defense called three witnesses: defendant, defendant's wife Munice, and a friend (Jennifer Betzler), to describe defendant's version of what occurred during the incident on Park Way. According to these witnesses, the three of them, along with defendant's and Munice's baby, were in a department store parking lot when defendant and Munice started arguing about Munice wanting to visit her ex-boyfriend (Efrain Quintero) who lived in a home behind the residence where the charged assault occurred. During the argument, Munice ran into the store, and defendant was thereafter unable to find her. Defendant, accompanied by Betzler and the baby, drove the short distance to Park Way where Quintero lived. When they saw a car pull up by Quintero's residence, Betzler suggested that defendant check to see if Munice was inside the car.

Defendant, who walks slowly and sometimes uses a cane due to a work injury, got out of his car holding the cane in one hand to help him stand up. In his other hand, he was holding two cell phones (belonging to him and to Betzler) that he had grabbed from his lap. Defendant lifted his hand to point at Quintero's house and started to ask the man in the car if he had seen his wife walking around, but the car sped off.

4

Defendant claimed he did not look at the man as they passed each other in their cars. Also, defendant and Betzler testified he did not yell at the man; he did not touch the man's car or pull on his car door; and he did not have a gun. Shortly after, Munice (who had hidden in the women's dressing room at the department store) called from her cell phone, and defendant and Betzler returned to the store and picked her up.

Concerning the gang enhancement allegation, defendant testified he was in a gang when he was younger, but he quit the gang at age 21, had children, and "tried to be a family man."

*Jury Verdict and Sentence*

Defendant was charged with assault with a semiautomatic firearm (count 1, Pen. Code,[3] § 245, subd. (b)); assault with a firearm (count 2, § 245, subd. (a)(2)); and possession of a firearm by a felon (count 4, former § 12021, subd. (a)(1).)[4] The counts included enhancement allegations for personal use of a firearm (counts 1 and 2), and committing the offense to benefit a gang (counts 1, 2, and 3). The jury convicted defendant of the charged offenses, found the personal firearm use allegations to be true, and rejected the gang enhancement allegations. Defendant admitted several allegations based on his prior convictions, including a serious felony prior and a strike prior. The trial court sentenced him to 17 years in prison; i.e., 12 years for the count 1 assault with a

---

[3] Subsequent unspecified statutory references are to the Penal Code.

[4] The information also charged defendant with attempted robbery (count 3). The trial court granted defendant's motion to dismiss this count at the conclusion of the prosecution's case.

semiautomatic firearm (double the middle term based on the strike prior) and five years for his serious felony prior conviction. The court struck the punishment on the count 1 personal firearm use enhancement, and stayed the sentences on the remaining counts.

DISCUSSION

I. *Display of Photographs of Guns*

Defendant argues the trial court erred by allowing the prosecutor to display photographs depicting a semiautomatic gun and a revolver during direct examination of Enciso.

A. *Background*

Prior to trial, Enciso told the authorities and others that defendant had a gun during the incident, and he specifically identified the gun as a semiautomatic. However, at trial, Enciso did *not* testify that he was certain defendant had a gun; rather, he qualified his statements by saying the object in defendant's hand appeared to be a gun, and he thought defendant had a gun but it could have been another object. Also, Enciso testified he could not describe the object in defendant's hand.

The testimony in this regard included the following:

"[Enciso:] And he pulled out *what appeared to be a weapon, but it could have been anything. Could have been a stapler* I mean. [¶] . . . [¶] He had *what appeared to be a handgun*, but I couldn't describe the handgun or— [¶] . . . [¶] I told [the police] exactly what happened; that there was a vehicle that pulled in front of my car, *looked like he had a gun*, thought he was going to sho[o]t at me . . . .

[¶] . . . [¶]

"[Prosecutor:] You told 911 it was a handgun, correct?

6

"[Enciso:]  Yeah.  I was scared that night.  *Could have been.* . . .

[¶] . . . [¶]

"[Prosecutor:]  You told 911 that it was a small handgun?

"[Enciso:]  Correct. . . .

[¶] . . . [¶]

"[Prosecutor:]  And when you talked to the police, you told them that it was a small black handgun . . . [¶] . . . [¶] that Mr. Arroyo had in his hand?

"[Enciso:]  Yes. . . .

[¶] . . . [¶]

"[Prosecutor:]  Describe the weapon that was in Mr. Arroyo's hand.

"[Enciso:]  Probably couldn't describe it to you.  It was dark.  I mean, like I said, it was dark that night.  I was scared.  *Thought he had a gun.*  I mean someone driving toward me, parks in front of my car, walks toward my car, the only thing I could assume is he is trying to carjack me.  Living in that area you have to assume that.  *Could have had anything, but looked like a handgun.*  I mean, *it just didn't look like a revolver*, but I didn't spend too much time staring at his hand."  (Italics added.)

To rehabilitate Enciso's failure at trial to describe the gun as a semiautomatic, the prosecutor told Enciso he was going to show him "examples" of guns and Enciso should say if he knew "the difference."  The prosecutor displayed a photograph of a semiautomatic, and asked if Enciso "generally" recognized the item in the photo.  The prosecutor then asked essentially the same questions with a photo of a revolver.  In response, Enciso identified the items in the photos as a semiautomatic handgun, which loaded through a clip in the handle, and a revolver, for which bullets are loaded through the cylinder in the center of the gun.  The prosecutor also elicited testimony from Enciso

7

that he was afraid to testify because he and his family had been threatened several times about his testifying, including by defendant's wife.

Later, during a discussion outside the presence of the jury, the prosecutor requested that the photos be admitted into evidence, stating that Enciso told the police that defendant had a semiautomatic gun, and the photos showed that Enciso knew the difference between a semiautomatic and a revolver. The trial court rejected the prosecutor's request to admit the photos into evidence, but stated the prosecutor could properly display the photos to show that Enciso knew the difference between the two types of guns. The court also declined a defense request to admonish the jury that the photos did not depict the gun purportedly used in the incident, but said defense counsel could pursue this point on cross-examination. On cross-examination, Enciso acknowledged that he viewed the photos shown by the prosecutor solely to show he knew the difference between a semiautomatic and a revolver, and that he did not know anything about the specific semiautomatic weapon displayed in the photo.

The prosecutor also displayed the gun photos during the testimony of prosecution witness Detective David Beatty. Detective Beatty testified that when he interviewed Enciso, Enciso said defendant was carrying a semiautomatic, and Enciso did not express any doubt that there was a gun in defendant's hand. The prosecutor showed the detective the same photos shown to Enciso and had the detective identify them as depicting "an example" of a semiautomatic and a revolver. On cross-examination, Detective Beatty acknowledged that no gun was found that was attributed to defendant, and he had no

8

knowledge of any connection between the semiautomatic described at trial and the gun allegedly used by defendant.

## B. *Analysis*

A trial court has broad discretion to determine relevancy and whether probative value is outweighed by concerns of undue prejudice under Evidence Code section 352. (*People v. Horning* (2004) 34 Cal.4th 871, 900.) We do not disturb the trial court's ruling unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

To support his contention that the court abused its discretion, defendant asserts there was no showing the photos depicted a gun similar to the one used in the crime, and absent this showing the display of the photos had no relevance and was more prejudicial than probative. The contention is unavailing. The court could reasonably find that the photos were relevant to support the charge of assault with a semiautomatic firearm given that Enciso told the police defendant had a semiautomatic, but at trial said he could not describe the item in defendant's hand. Based on Enciso's equivocal trial testimony, the trial court reasonably permitted the prosecutor to display the gun photos to show that semiautomatic guns and revolvers are visually distinguishable; Enciso knew the difference between the two types of weapons; and his pretrial statement to the police that defendant had a semiautomatic weapon should be credited. The court did not abuse its discretion in finding that the relevancy of this evidence outweighed its potential for

prejudice given Enciso's failure at trial to provide a description of the item consistent with his pretrial statements.

Defendant also argues the trial court improperly refused the defense request to admonish the jury about the limited purpose of the photos, and the prosecutor improperly used the photos to suggest that they depicted the weapon used by defendant. The record does not show error in this regard. When questioning Enciso and the detective about the photos, the prosecutor made clear that he was showing them only as examples of these types of guns. Further, on cross-examination of Enciso and the detective, defense counsel elicited testimony confirming that the photos were being shown to support that Enciso knew what a semiautomatic firearm looked like, and that no weapon was found that had been connected to defendant. There is nothing in the record that suggests the jury might have been misled to think the photos depicted the actual weapon allegedly used in the offense.

## II. *Admission of Hearsay Testimony from Third Parties That Victim Said Defendant Had a Gun*

Defendant asserts the trial court erred in admitting hearsay evidence that Enciso told third parties that defendant had a gun.

### A. *Background*

After Enciso's testimony, the prosecutor was permitted to introduce hearsay testimony from several witnesses who testified that Enciso told them defendant had a gun. Defendant challenges the admission of hearsay testimony on this point from (1) witness Alicia Alvarado who talked with Enciso about the incident some time after it

10

occurred, and (2) the detective and district attorney investigator who interviewed Enciso about the incident.[5]

Alvarado, who lived at Philips's residence, testified that Enciso talked to her briefly about the incident the day after it occurred. When the prosecutor asked Alvarado, "Did [Enciso] specifically tell you it was a gun?" Alvarado answered, "Yes." Detective Beatty, who interviewed Enciso on May 12, 2010, testified that Enciso, expressing no doubt, told him that defendant was carrying a gun and that it was a semiautomatic.[6] The investigator from the district attorney's office, Matthew O'Deane, testified that when he interviewed Enciso on October 6, 2010 and March 9, 2011, Enciso said defendant pointed a handgun at him while trying to open the car door. O'Deane asked Enciso if defendant could have been holding another object, for example a walking cane, and Enciso replied, "[N]o. It was definitely a handgun."

After Alvarado's testimony, in a discussion outside the presence of the jury, defense counsel moved to strike Alvarado's testimony that Enciso said defendant had a gun because the testimony was hearsay about statements made "days" after the incident. In opposition, the prosecutor argued that Enciso had changed his story because he had

---

[5] Enciso's brother (Jose) also testified that Enciso told him "there was a gun" when describing the incident. On appeal, defendant does not challenge the admissibility of Jose's hearsay testimony, which was apparently admitted under the excited utterance exception to the hearsay rule.

[6] Detective Beatty further testified that during the interview he showed Enciso his semiautomatic duty weapon, and asked if the handgun held by defendant looked similar to this duty weapon or whether it looked like "what we refer to sometimes as a cowboy gun or a revolver." At trial, the prosecutor had Detective Beatty display his semiautomatic duty weapon to the jury.

been threatened and he was now saying he was not certain defendant had a gun; accordingly, his previous inconsistent statements about defendant having a gun should be admitted. The court declined to strike Alvarado's testimony. The court stated that in Enciso's trial testimony, he acknowledged that he told people that defendant had a gun; however, he was now unable to testify that he was certain that it was a gun. The court ruled the prosecutor could properly impeach Enciso's trial testimony with testimony from third parties showing that Enciso made previous statements specifically reflecting that he was certain defendant had a gun.

## B. *Analysis*

Under the prior inconsistent statement exception to the hearsay rule, a witness's prior statement is admissible if the witness's trial testimony is inconsistent with the prior statement. (Evid. Code, § 1235; *People v. Johnson* (1992) 3 Cal.4th 1183, 1219.) A trial court may find a witness's testimony is impliedly inconsistent when the witness testifies in a deliberately evasive manner. (*People v. Johnson, supra*, at p. 1219; *People v. Hovarter* (2008) 44 Cal.4th 983, 1008-1009.) On appeal, we review the trial court's ruling for abuse of discretion, and uphold the ruling if there is a reasonable basis for the court's conclusion. (*People v . Hovarter, supra*, at pp. 1007-1008; *People v. Johnson, supra*, at pp. 1219-1220.)

At trial, Enciso failed to definitively identify the item in defendant's hand as a gun; rather, he testified he thought Enciso had a gun but it could have been any other item, even a stapler. In contrast, in his pretrial statements he unequivocally told Alvarado, the detective, and the district attorney investigator that defendant had a gun. Given the

12

inconsistency between Enciso's pretrial and trial statements on the key disputed issue of whether defendant had a gun, the trial court did not abuse its discretion in admitting Enciso's statements to third parties that defendant had a gun under the prior inconsistent statement exception to the hearsay rule.

Defendant argues the hearsay testimony from the third parties that Enciso said he had a gun should have been excluded under Evidence Code section 352 because it was cumulative and more prejudicial than probative. He asserts that because Enciso admitted at trial that he told the authorities defendant had a gun, the hearsay testimony was repetitive and "served no purpose other than to give the appearance through numerous witnesses that a gun existed." The trial court was not required to exclude the evidence on cumulative grounds. Although Enciso acknowledged at trial that he told the authorities defendant had a gun, he also sought to explain his pretrial statements by saying that he assumed the item was a gun because he was afraid that night, it was dark, and the circumstances and neighborhood led him to believe defendant was trying to carjack him. The trial court reasonably allowed the prosecutor to support its case by presenting testimony from the third parties who described Enciso's straightforward reports that defendant had a gun. The testimony from the third parties strengthened the prosecutor's theory that Enciso was backtracking on his earlier unequivocal statements because he was afraid, not because he was actually uncertain whether defendant had a gun.

Further, the trial court was not required to conclude the hearsay testimony was unduly prejudicial. Undue prejudice does not exist merely because highly probative evidence is damaging to the defense case, but rather arises from evidence that uniquely

13

tends to evoke an emotional bias against the defendant or cause prejudgment of the issues based on extraneous factors. (*People v. Doolin* (2009) 45 Cal.4th 390, 438-439.) Enciso's prior inconsistent statements were highly relevant to the key disputed issue, and they did not involve emotional or extraneous matters unrelated to the issues.

### III. *Admission of Evidence that Defendant's Wife Threatened the Victim After the Crime*

Defendant argues the trial court erred in overruling his Evidence Code section 352 objection to the evidence that his wife, Munice, threatened Enciso after the crime and told him he should not testify.

### A. *Background*

Prior to defendant's trial, Munice pled guilty to being an accessory after the fact based on a confrontation she had with Enciso during which she threatened him and told him not to testify. The parties agreed there was no evidence that defendant was involved in her threatening conduct. During pretrial motions, the prosecutor argued the evidence of Munice's threat to the victim was highly relevant to her credibility, and also to the frame of mind of prosecution witnesses when they come to court to testify. The trial court agreed that Munice's attempt to keep the victim from testifying against defendant was highly relevant to her credibility, and declined to exclude the evidence. The court stated defense counsel could use cross-examination to ensure the jury did not impute Munice's conduct to defendant, and agreed to admonish the jury that Munice's conviction arising from this conduct was relevant only to evaluate her credibility.

14

When Enciso testified at trial that he thought defendant had a gun but was not certain, the prosecutor elicited testimony from him that he was afraid to testify because he and his family had been threatened. Enciso testified that some time after his encounter with defendant, he learned from his family that someone who knew defendant had stopped at their apartment, harassed them, and told them to tell Enciso not to testify. On another occasion Enciso was standing outside Philips's residence with Munice's ex-boyfriend (Quintero) who lived in a home behind Philips's home. When Munice arrived in front of the residence and figured out that Enciso was the person involved in the case against her husband, she yelled angrily at him. She told Enciso that he knew defendant did not have a gun; Enciso was messing with her family and did not know what he was talking about; Enciso should not testify; and "this isn't over." Munice also threw a cigarette at Quintero's face and hit him.

Also, on cross-examination of Munice, the prosecutor asked her if in 2011 she was convicted of a felony that affects her credibility, and whether the conviction arose from her "going over and confronting . . . Enciso" about the current case. Although she denied that her conversation with Enciso was threatening, she acknowledged she pled guilty based on making a threat to Enciso. After Munice's testimony, the court instructed the jury on the limited purpose of this evidence:

> "[Y]ou've heard evidence from Munice Arroyo that she was convicted of a crime after some discussions with the victim in this matter. I wanted to tell you that this is in no way any evidence against Mr. Arroyo. *Mr. Arroyo has not been implicated in that conversation in any way and you can use the evidence only as it affects Mrs. Arroyo's credibility*, but has nothing to do with Mr. Arroyo and is not any evidence in any way against him. It is

15

[admitted] only for that limited purpose as to one of the factors you can consider when assessing the credibility of Mrs. Arroyo." (Italics added.)

After the court gave this admonition, the prosecutor requested that the court further instruct the jury that it could also consider the threat evidence to support Enciso's credibility. The court declined to add this to the admonition, but said the prosecutor could make this argument in closing arguments to the jury.

## B. *Analysis*

The trial court reasonably permitted the prosecution to present evidence of Munice's threat to Enciso to support that Enciso's equivocal trial testimony on the gun issue was the result of his fearful reaction to the threat, and that Munice was not a credible witness given her pretrial attempts to interfere with Enciso's participation in the trial. The fact that defendant was not involved in Munice's threat does not detract from the high relevancy of the threat evidence on the issues of Enciso's fear of testifying and Munice's credibility. Further, the court took measures to ensure that the jury did not inappropriately attribute Munice's threat to defendant by explicitly instructing the jury that defendant was not "in any way" implicated in the conversation between Enciso and Munice, and the evidence could only be considered to evaluate Munice's credibility. We presume the jurors understood and followed this instruction. (*People v. Gray* (2005) 37 Cal.4th 168, 217; *People v. Lopez* (2011) 198 Cal.App.4th 698, 708.)

Defendant argues the jury could have judged Munice's credibility based on the mere fact of her convictions; there was no need to provide the jury with the details of her threat to Enciso; and these details served no purpose other than placing defendant in a

16

"bad light."  For the reasons we have stated, this contention fails.  The details of the threat evidence were relevant to show Enciso was afraid to testify, and that Munice was not a credible witness given her attempt to interfere with the prosecution of the case.

Defendant also argues the court erred because although it gave the limiting admonition about the threat at the time of *Munice's testimony*, it refused to give the limiting instruction when defense counsel requested it in response to the prosecutor's elicitation of the threat testimony during *Enciso's testimony*.  Assuming arguendo the court abused its discretion by failing to expressly tell the jury that the limiting instruction also applied to Enciso's testimony about the threat, the error was harmless.  The jurors knew from the admonition given at the time of Munice's testimony that defendant was not at all involved in Munice's threatening conduct.  Given this clear instruction, there is no reasonable probability the jurors were misled to believe that defendant was part of the threatening conduct described by Enciso.  (See *People v. Manning* (2008) 165 Cal.App.4th 870, 880 [reversal for failure to give limiting instruction requires reasonable probability of different outcome].)

IV.  *Admission of Gang Expert Testimony*

Defendant argues the trial court abused its discretion under Evidence Code section 352 by admitting expert testimony on gang-related matters.  Although the jury rejected the gang benefit enhancement allegations (§ 186.22, subd. (b)(1)), he asserts admission of the gang expert's testimony prejudiced the jury against him on the issue of whether he had a gun.

17

During pretrial motions, defendant objected to admission of gang expert testimony on the basis that the evidence would show the crime was not gang related. The trial court rejected his argument, reasoning that because the gang enhancement allegation was bound over for trial after the preliminary hearing, the prosecutor was entitled to present evidence to support the gang enhancement.

At trial, Enciso testified that defendant was "staring hard" at him in a "kind of aggressive" manner, and acknowledged that he stared back at defendant. In the 911 call played for the jury, Enciso told the operator that defendant looked like a gang member. The prosecution's gang expert testified that staring in gang culture can be an act of disrespect that must be responded to so the gang member does not appear "weak." Further, the expert generally described gang culture; explained how gang members carry weapons and commit assaults and robberies to increase status; described defendant's gang tattoos and opined that defendant was a gang member even though he at times told the police he was inactive; and opined that hypothetical conduct akin to the facts of the current offense promoted the gang.

Defendant has presented no grounds to support that the court abused its discretion in admitting the gang expert testimony. Regardless of the strength of the evidence that the crime was gang related, the prosecution was entitled to present evidence in support of the gang enhancement allegation. (See *People v. Gutierrez* (2009) 45 Cal.4th 789, 818-820.)

18

V. *Defense Witness Betzler's Appearance in Prison Clothing*

Defendant argues the trial court erred when it failed to have defense witness Betzler wear civilian, rather than prison, clothing.

Prior to calling Betzler as a witness, defense counsel told the court that Betzler was in custody and asked whether he should obtain civilian clothing for her. During the ensuing discussion, the court and prosecutor stated they did not think this was typically done for witnesses, and the court noted she did not have the same rights as defendant to shield her custody status from the jury. Defense counsel did not pursue the matter further, and Betzler apparently appeared before the jury in prison clothing. Just before Betzler commenced her testimony, at defense counsel's request, the trial court told the jurors that they could see she was in custody; they should not speculate about the reason for her being in custody; the fact she was in custody did not by itself make her more or less believable; and they should evaluate her testimony in the same way as any other witness's testimony. The trial court repeated essentially the same admonition when instructing the jury at the conclusion of the trial.

Upon a timely request, a defendant has a right to have defense witnesses appear before the jury in civilian, rather than prison, clothing. (*People v. Froehlig* (1991) 1 Cal.App.4th 260, 264.) The trial court erred in failing to afford this right to defendant when defense counsel raised the issue of Betzler's clothing. However, the error was harmless because there is no reasonable probability it affected the outcome. (*People v. Ceniceros* (1994) 26 Cal.App.4th 266, 278-280.) The rule that defense witnesses should not be required to appear in prison clothing is designed to obviate the possibility that the

19

jury might question their credibility because they have committed a crime and are incarcerated. (See *Froehlig, supra*, at pp. 264, 266; *Ceniceros, supra*, at p. 279.) For impeachment purposes, the prosecutor was properly permitted to elicit testimony from Betzler that she had sustained six felony convictions that affected her credibility (in 2003, 2004 (two convictions), 2005, 2006, and 2007). Thus, the jurors knew that Betzler had repeatedly engaged in felonious criminal conduct, and the only additional information provided to them from her prison clothing was that she was currently incarcerated for her criminal conduct. Given that the jurors properly knew she had sustained numerous felony convictions, there is no reasonable probability that their assessment of her credibility would have been substantially altered by their knowledge of the fact that she was currently incarcerated.[7]

## VI. *Sufficiency of the Evidence of Assault*

Defendant argues there was insufficient evidence to establish that he committed an assault. He contends the evidence did not show that he committed an act that by its nature would directly and probably result in the application of force.

To commit the offense of assault, the defendant must willfully perform an act that by its nature will probably and directly result in the application of physical force against another. (*People v. Chance* (2008) 44 Cal.4th 1164, 1169.) In evaluating a challenge to the sufficiency of the evidence, we review the entire record in the light most favorable to

---

[7]     Although it is not clear from the record, Betzler may also have been wearing restraints visible to the jury. To the extent defendant's arguments are premised on the possibility of visible shackles, we reach the same conclusion as for the prison clothing.

the judgment to determine whether there is substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*Ibid*.)

Enciso testified that it appeared that defendant was grabbing toward his car door handle: "Looked like he was going to grab my car door. Could have sworn he grabbed the handle." Also, Enciso testified the gun was pointed under the window line of the door, and thus it was pointed in the direction "anywhere . . . from [his] waist down . . . ." When queried further on this point, Enciso agreed that if the gun had "gone off" the bullet "would have gone through the door and hit [him] in the leg." Corroborating this assessment, Detective Beatty testified that a handgun can be fired through a car door and harm the occupants of the vehicle, and that Enciso told him that defendant was pointing the gun at Enciso's "torso or leg area." Drawing all reasonable inferences in favor of the jury's verdict, the jury could reasonably find that defendant's act of pointing the gun at the car door and grabbing towards the door handle reflected aggressive conduct showing that defendant could have readily fired the gun and hit Enciso with a bullet.

To support a contrary conclusion, defendant asserts there was no evidence he threatened Enciso; the gun was pointed down and below the window line during the entire incident; and Enciso did not see defendant make any motion towards him with his hand. These factors do not defeat the evidentiary support for the verdict based on defendant's aggressive conduct indicating he could have shot at Enciso.

21

VII. *Alleged Prosecutorial Misconduct During Closing Argument*

Defendant argues the prosecutor committed misconduct during closing argument by implying that the defense witnesses' descriptions of the incident were fabricated with the assistance of defense counsel, and by vouching for the integrity of prosecution witness Enciso.

In support, defendant points to the following portions of the prosecutor's closing argument. The prosecutor argued to the jury that initially after the crime Enciso told people, including the authorities, that defendant pointed a gun at him; thereafter, he and his family were threatened by defendant's wife and others; and by the time of trial Enciso was "scared out of his mind." The prosecutor also argued that during the same time period as the threats, "all of a sudden" the defense "has a witness"; i.e., Betzler. The prosecutor stated:

> "Then out of the blue, right in that same time period, we've got Jennifer Betzler, who pops out of nowhere. She comes in. *She talks to defense*. And now, all of a sudden, defense has a witness. And that witness magically says the exact thing that they need the testimony to say." (Italics added.)

At this point, defense counsel objected that the prosecutor was improperly suggesting defense counsel had something to do with this, and the court overruled the objection. The prosecutor then continued his argument, stating that the version of the incident described by the defense witnesses was unreasonable and fabricated:

> "And what does she magically say? Well, it wasn't a gun. It was a cane. There was no gun. It was just a cane. He just stepped out of the car and the car took off. How logical is that? *Let's think about that story they are all trying to make us believe*. [Enciso] is at his friend's house. A car, according to their story, slowly pulls up to them and he stands up and

22

[Enciso] loses his mind and drives off. That is not reasonable—it is his neighborhood—because it didn't happen like that. *That is a story that they fabricated*. No gun, just a cane. That is all. She said that is all he had. [¶] Then we come in here to testify. And *between there she has clearly had conversations with people. . . .* She comes to testify.

[¶] . . . [¶]

"Munice Arroyo comes in here and talks. We know about her background. Jennifer Betzler comes in. We know about her felony background in chains. And what does she say now? Oh, gun and two cell phones, two cell phones in his hand. *Because now they are thinking that cane story is kind of ridiculous. We have to come up with something a little better.* So now we have two cell phones. She says [defendant] gets out of the car with the cane and two cell phones by his side, and that is all he does, and the car just drives off. Is that reasonable? Does that even make any sense? No. Both say he didn't get close to the car and [Enciso] loses his mind and takes off. It is not reasonable. *It is a story they come up with to try to get out of the charges in this case.* [¶] *Focus on the victim and his emotions and why he was so scared, and that's our case, because he knew it was a gun.*" (Italics added.)

Defendant also cites a portion of the prosecutor's rebuttal closing argument, where the prosecutor stated that defendant was on trial because he committed an assault, and again asserted Betzler was not a credible witness. The prosecutor stated:

"The reason he's here is because he pointed a gun at Martin Enciso, pulled on his door handle and committed an assault on an innocent member of our community. . . . [¶] . . . [¶] *The people he brings in, Jennifer Betzler,* she has admitted to going in knowing she is breaking the law by giving Munice [Arroyo], her best friend, her i.d. to go in and see Mr. Arroyo when he is in jail. She's willing to break the law for Munice [Arroyo] and her husband Ruben Arroyo. So she comes in here. *You think that is any big deal to lie a little bit to change her story just enough to give him the hope one of you will be fooled by this.*" (Italics added.)

A prosecutor is given wide latitude to vigorously argue the case as long as the argument is "a fair comment on the evidence, which can include reasonable inferences or deductions to be drawn therefrom." (*People v. Harrison* (2005) 35 Cal.4th 208, 244.)

23

The prosecutor may properly argue "against the jury's acceptance of the defense presented." (*People v. Marquez* (1992) 1 Cal.4th 553, 576.) However, the prosecutor should not attack the integrity of defense counsel or suggest defense counsel has fabricated a defense. (*People v. Cash* (2002) 28 Cal.4th 703, 732.) Further, the prosecutor may make assurances regarding the reliability of a witness based on facts and inferences drawn from the record, but should not refer to matters outside the record to bolster the veracity of a witness. (*People v. Turner* (2004) 34 Cal.4th 406, 432-433.) When evaluating the propriety of the prosecutor's comments to the jury, " 'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*People v. Harrison, supra*, 35 Cal.4th at p. 244.)

There is no reasonable likelihood the jury interpreted the prosecutor's comments that the defense version was fabricated to mean that defense *counsel*, as opposed to the defense *witnesses*, engaged in the fabrication. The prosecutor argued that Betzler fabricated a story that defendant only had a cane and two cell phones, not a gun, and that Betzler was not credible because of her criminal history and her willingness to engage in acts of dishonesty for her best friend, defendant's wife. The prosecutor's statement that Betzler emerged as a witness after talking "to defense" merely suggests that Betzler talked to defense counsel; it does not, standing alone, indicate that defense counsel assisted Betzler with a concocted story. The focus of the prosecutor's argument was that the defense witnesses, including Betzler, Munice, and defendant, fabricated a story to try to show that defendant engaged in innocent conduct that was misinterpreted by the

24

victim. When the closing argument statements are viewed as a whole and in context, there is no reasonable likelihood the jury thought the prosecutor was also attributing the fabrication to defense counsel.

Further, the prosecutor did not vouch for Enciso's veracity based on matters outside the record. The prosecutor's statement that the jury should consider Enciso's fearful emotions was properly based on the trial evidence.

## VIII. *Cumulative Error*

Defendant argues he was deprived of a fair trial because of the cumulative effect of the errors committed at his trial. We have found one instance of error (a defense witness appearing in prison clothing), and one instance of arguable error (the failure to expressly extend the limiting admonition to Enciso's testimony about the threat from defendant's wife). These errors were not of such significance to cumulatively deprive defendant of a fair trial.

## IX. *Lesser Included Offense*

Defendant was convicted of both assault with a semiautomatic firearm (count 1) and assault with a firearm (count 2). The trial court stayed the sentence on the count 2 conviction. As conceded by the Attorney General, assault with a firearm is a lesser included offense of assault with a semiautomatic firearm. (*People v. Martinez* (2012) 208 Cal.App.4th 197, 199.) A defendant may not be convicted of both a greater offense and a lesser included offense. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) Accordingly, it is not sufficient to merely stay the sentence on count 2; rather, the count 2 conviction must be stricken from the judgment.

DISPOSITION

The conviction for assault with a firearm (count 2) is stricken from the judgment. As so modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment to remove the count 2 assault with a firearm conviction (and its accompanying enhancements). The court shall send a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.


HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.

26